SEXTON, Judge.
The two defendants herein, the State of Louisiana Employees’ Group Benefits Program and the Board of Trustees of the Sheriffs’ Pension and Relief Fund, both appeal an in solido judgment in the amount of $4,770.97 rendered against them in the trial court. The plaintiffs Mr. and Mrs. Jack Danley had sued these defendants to be reimbursed certain medical expenses incurred by Mrs. Danley as a result of a colon by-pass operation. In rendering judgment for the plaintiffs, the trial court found both defendants were negligent in handling Mrs. Danley’s request to be added to her husband’s group insurance program through the defendant State of Louisiana Employees’ Group Benefits Program, (hereinafter referred to as “Employees’ Group”). Previously the trial court had overruled the decli-natory exception of improper venue filed by the defendant, Board of Trustees of the Sheriffs’ Pension and Relief Fund, (hereinafter referred to as “Sheriffs’ Fund”). Although there are several assignments of error by each defendant-appellant, they resolve themselves into two legal issues. First, did the trial court err in overruling the Sheriffs’ Fund’s venue exception? Secondly, did the trial court err in applying negligence principles to this cause and then finding each of these defendants had breached a duty to these plaintiffs? We answer both affirmatively, and accordingly reverse.
Mrs. Danley married Mr. Danley, a retired West Carroll Parish Sheriff’s deputy on July 1, 1979. At that time, Mr. Danley had medical insurance through the Employees’ Group. However, no effort was made to add Mrs. Danley to the Employees’ Group until February 20, 1980, when Mrs. Danley called the office of the Sheriffs’ Fund in Monroe, speaking to Mrs. Betty S. Griffith, an administrative assistant. Mrs. Danley inquired of Mrs. Griffith as to whether she could be added to her husband’s coverage.
Mrs. Griffith testified that she called the Baton Rouge office of the Employees’ Group and talked to an unknown party who advised her that Mrs. Danley could be covered by the filing of a certain change document. Mrs. Griffith, on that same day, prepared such a form and sent it to the Employees’ Group along with a letter inquiring whether any other action was necessary to accomplish coverage. Thereafter, still on February 20, Mrs. Griffith advised Mrs. Danley that coverage was available.
On March 3, approximately 11 days later, Mrs. Danley talked to a Minden physician concerning colon by-pass surgery and she was advised that the operation could be performed if she could present evidence of insurance. At Mrs. Danley’s request, Mrs. Griffith wrote a letter to the Minden doctor advising that coverage existed, and enclosing therewith a copy of the transmittal letter with which Mrs. Griffith transmitted the change form in attempting to secure Mrs. Danley’s coverage with the Employees’ Group. In writing the doctor Mrs. Griffith stated:
“Per the attached copy of my letter of February 20, 1980, addressed to Group Insurance Section, Baton Rouge, Louisiana, please be advised that Melba Danley has hospitalization coverage under the State of Louisiana Group Insurance Policy with CNA Insurance Company effective March 1, 1980.”
*386 The operation was performed on or about March 10 and thereafter the claim for the expenses attendant thereto was submitted to the Employees’ Group. It was denied.
It should be noted that the Employees’ Group is an entirely different entity from the Sheriffs’ Fund and has no agency relationship with it. The only function performed by the Sheriffs’ Fund for its members, related to Employees’ Group, is the deduction of the premiums from retirement checks and the remission of the premiums to the Employees’ Group.
The Employees’ Group, which has some 100,000 members, serving some 400 state agencies, denied receipt of Mrs. Danley’s application which Mrs. Griffith had forwarded on February 20. Employees’ Group official Mr. Baugh testified that there was no indication in the Employees’ Group computer file that the application had ever been received. Mr. Baugh, whose duties included making determinations of eligibility, stated that he had no knowledge of the application or the preceding phone call. The Sheriffs’ Fund was never invoiced by the Employees’ Group for Mrs. Danley’s coverage, although Mrs. Griffith altered the Employees’ Group invoice with respect to Mr. Danley and included a premium to the Employees’ Group for Mrs. Danley’s coverage. The record indicates that the first premium sent by Mrs. Griffith for Mrs. Danley was not received until the latter part of March, subsequent to the surgery and the incurring of the expenses attendant thereto. When the Employees’ Group realized it had received such premiums it advised the Sheriffs’ Fund to take credit for them on their next invoice.
Mr. Baugh also testified that a wife of a retired member who failed to apply for coverage within 30 days of eligibility (which occurred at the time of her marriage to the retired member) could never obtain coverage. He further testified that even if coverage were available, that she would have been required to submit evidence of insura-bility and that pre-existing conditions would not have been covered for at least one year following the date of coverage. It should be noted that Mrs. Danley, prior to her operation, weighed approximately 250 pounds and was 5'6" tall, indicating a preexisting condition which the surgery was designed to correct.
In this regard we note that the coverage policy pamphlet admitted as joint exhibit # 1 entitled “State of Louisiana Employees Uniform Group Benefits Program,” by our reading, does not require that a dependent of a retired member must apply for coverage within 30 days of obtaining that status. However, it is clear that any person who applies later than 30 days after becoming eligible is subject to a pre-existing condition limitation of at least 12 months. Also it is clear that on a late application such as that of Mrs. Danley, the applicant must file certain additional statements and there is a longer delay before coverage is effective. Thus Mrs. Danley could not have been covered before April 1.
We begin by analyzing plaintiffs’ claims against the Sheriffs’ Fund, and do not reach the substantive merits of plaintiffs’ claims against that defendant because the procedural issue of venue is dispositive here. We hold that the parish in which the plaintiffs filed their suit was a forum of improper venue for a suit against the Sheriffs’ Fund, and therefore reverse the trial court’s decision overruling the declinatory exception of improper venue.
The sole pertinent fact in our venue analysis is that plaintiffs brought suit in their domicile parish, West Carroll, while the domicile of the Sheriffs’ Fund is in East Baton Rouge. There are several statutory provisions which could serve as putative authority for the proposition that West Carroll Parish was a proper venue for the Dan-leys’ suit against the Sheriffs’ Fund. However, a careful examination of the pertinent statutory language leads us to conclude that LSA-R.S. 33:1451 is the directly controlling statutory enactment, and that only East Baton Rouge Parish is a forum of proper venue for suits against the Sheriffs’ Fund.
LSA-R.S. 33:1451 provides, in pertinent part, that the Sheriffs’ Fund:
*387 “shall be domiciled in the City of Baton Rouge, Louisiana, [in East Baton Rouge Parish] where all suits against it must be instituted .... ” (emphasis added).
Thus, the legislature has unequivocally expressed its intent that suits against the Sheriffs’ Fund be filed in East Baton Rouge Parish. We further note that this intention has been expressed in mandatory terms. To conclude that East Baton Rouge was intended to be an appropriate, but merely optional forum, would be to commit a great disservice to the legislature’s clearly expressed intent. Furthermore, in existence, but not effective until September 12, 1980, some five weeks after this suit was filed, was Act No. 164 of 1980 which established Article 84 of the Code of Civil Procedure. That article states in pertinent part:
“Actions involving the ... Sheriffs’ Pension and Relief Fund ... shall be brought in the parish of East Baton Rouge or in the parish of the domicile of the retirement system .... ” (emphasis added).
Thus Article 84, which establishes venue for a number of state retirement systems, is further evidence of the strong legislative intent embodied in LSA-R.S. 33:1451.
For the sake of treating the venue isgue comprehensively, however, we briefly analyze other sources of statutory authority for the proposition that this suit could have been brought in West Carroll Parish. LSA-C.C.P. Art. 73 stipulates that:
“An action against joint or solidary obli-gors may be brought in any parish of proper venue, under Article 42, as to any obligor who is made a defendant.”
Article 73 could be urged as authority for the proposition that West Carroll Parish was a parish of proper venue under the theory that if that parish was a forum of proper venue as to the Employees’ Group it was also proper as to the Sheriffs’ Fund, since the Sheriffs’ Fund is alleged to be the Employees’ Group’s solidary co-obligor. Article 73 cannot be availed here to secure venue in West Carroll Parish for the simple reason that West Carroll Parish is not a forum of proper venue under Article 42 for a suit against the Employees’ Group. The Employees’ Group is a statutory board domiciled in Baton Rouge, LSA-R.S. 42:871, having the powers and duties of a corporation, LSA-R.S. 42:874(A). It therefore technically has no “registered office” as per Article 42(2). As to this statutory state board, any “registered office” is obviously its domicile of East Baton Rouge Parish. We therefore conclude that Article 73 does not supply venue against the Sheriffs’ Fund in West Carroll Parish because West Carroll Parish is not an appropriate forum under Article 42, for suing its alleged solidary co-obligor, the Employees’ Group.
LSA-C.C.P. Art. 76 constitutes another potential statutory basis for the argument that West Carroll Parish was a forum of proper venue for the plaintiffs’ suit. This statute provides, in pertinent part, that:
“An action on a health and accident insurance policy may be brought in the parish where the insured is domiciled, or in the parish where the accident or illness occurred.”
Although this statute could constitute authority for the proposition that West Carroll Parish was a forum of proper venue if it were applicable, this statute is, by its very terms, inapplicable to our situation. It provides venue for actions on insurance contracts. The problem here is that this suit was not lodged pursuant to an insurance policy. In point of fact, Mrs. Danley did not even possess an insurance policy in this case. There was no insurance contract in existence which regulated the relations of Mrs. Danley and the defendants herein. Mrs. Danley did not, as the statute envision, bring “an action on a health and accident policy,” for the simple reason that in the context of this suit no such policy ever existed. Article 76 predicates its own operation upon the existence of an insurance contract, and because no such contract existed in this case, this article is by its own terms inapplicable.
Additionally, even if this action can be said to be a suit on a policy of health and *388 accident insurance, this general proposition of venue conflicts with the more specific dictates of LSA-R.S. 33:1451 (and LSA-C. C.P. Art. 84) which stipulates that all suits against the Sheriffs’ Fund must be lodged in East Baton Rouge Parish. We adhere to the venerable rule of statutory construction which dictates that in statutory conflicts, the more specific enactment should prevail over the more general. Thus, we give effect to the more specific statutory rule of LSA-R.S. 33:1451 (and LSA-C.C.P. Art. 84) which states that the Sheriffs’ Fund is to be sued in East Baton Rouge Parish, rather than the more general rule of Article 76. We note with particular emphasis that LSA-R.S. 33:1451 (and LSA-C.C.P. Art. 84) does not undertake merely to establish an optional forum for suits against the Sheriffs’ Fund. This statute mandates that “all ” suits against the Sheriffs’ Fund “must” be brought in East Baton Rouge Parish. Thus, it clearly indicates the redactors’ intent that East Baton Rouge Parish is the sole parish in which proper venue exists for a suit against the Sheriffs’ Fund.
LSA-C.C.P. Art. 74 supplies the predicate for plaintiffs’ strongest argument that West Carroll Parish constituted the proper forum for their suit against the instant defendants. This statute states that:
“An action for the recovery of damages for an offense or quasi offense may be brought in the parish where the wrongful conduct occurred, or in the parish where the damages were sustained.”
This article, by providing that venue is proper in the parish where “the wrongful conduct occurred” and “where the damages were sustained,” supports the contention that West Carroll Parish was a parish of proper venue under two distinct theories. West Carroll Parish could be urged as the parish of proper venue under the theory that the “wrongful conduct” — Mrs. Griffith allegedly negligent representations — occurred there. Alternatively, West Carroll Parish could be postulated as the parish of proper venue under the theory that the damages — the $4,770.97 debt — were sustained there.
While this reasoning is persuasive, we do not find it to be dispositive. Article 74 states a general rule of venue applicable to all offenses and quasi offenses. Thus for the same reasons just expressed with respect to Article 76 being superseded by the more specific dictates of LSA-R.S. 33:1451, Article 74 is likewise superceded by that specific statute.
Having examined all applicable provisions of Louisiana’s venue law, we must necessarily conclude that the Louisiana legislature intended that only East Baton Rouge Parish be considered a forum of proper venue for a suit against the Sheriffs’ Fund. We thus reverse the trial court’s decision to overrule the declinatory exception of improper venue urged by the Sheriffs’ Fund, and sustain that exception, holding that West Carroll Parish was not the forum of proper venue for a suit against the Sheriffs’ Fund. Since the venue for that suit was improper, and since this deficiency was not waived but was proeedurally urged, the suit against the Sheriffs’ Fund is hereby dismissed without prejudice and the trial court’s judgment against that agency is accordingly reversed.
We now treat the substance of plaintiffs’ claims against the Employees’ Group, since that agency did not raise any proeédural issue that would pretermit the disposition of this claim on its substantive merits. Having examined the facts of this case, we reverse the trial court’s decree that the Employees’ Group is liable to the plaintiffs in the amount of $4,770.97, finding that the Employees’ Group did not cause the plaintiffs’ compensable damages through the breach of a duty.
The trial court held that the Employees’ Group had negligently caused the plaintiffs harm and was therefore liable to them in tort. This holding was wholly predicated upon two omissions on the part of the Employees’ Group. The trial court expressly delineated these two crucial omissions in its written reasons for judgment:
“(1) failure to promptly take action on the February 20th letter which was presumably received since never returned unclaimed;
*389 (2) receipt of premiums and failure to promptly deny coverage until loss incurred;”
We fully understand that the trial court sympathetically responded to the administrative confusion in which Mrs. Danley was engulfed. However, we conclude that the judgment against the Employees’ Group was without adequate basis in tort law.
In assessing the first allegedly negligent omission on the part of the Employees’ Group — “their failure to promptly take action on the February 20th letter” — we note that this omission cannot be the predicate of tort liability absent the existence of a legal duty owed by the Employees’ Group to the Danleys and the breach of that duty. The facts salient to an analysis of this allegedly negligent omission are that Mrs. Griffith of the Sheriffs’ Fund sent a letter to the Employees’ Group on February 20th, asking for a verification of Mrs. Danley’s coverage, and that Mrs. Danley had surgery on March 10th. We presume in the first instance, that it took approximately two days for the letter to get from Mrs. Griffith’s office to the Employees’ Group’s office in Baton Rouge. Assuming then, that the Employees’ Group received the letter on February 22nd, and that any return mail would be at least two days in transit, the Employees’ Group would have had approximately 14 days to respond to the inquiry of Mrs. Griffith.
Implicit in the trial court’s decree that the Employees’ Group was negligent in failing to respond before Mrs. Danley’s surgery, is the supposition that the Employees’ Group possessed — and violated — a duty to mail a response to Mrs. Griffith’s request for verification in 14 days. The Employees’ Group, of course had an obligation to insure Mrs. Danley if the application was proper. However, 14 days, in our view, is not an unreasonably lengthy lapse of time in which to respond to such a request. Indulging a 14 day delay before responding to a request for coverage verification does not constitute an unreasonably risk-creating omission. Thus, while we would agree that this state group insurer has a duty to respond to a verification request with reasonable promptness, we hold that in this situation the Employees’ Group did not have a duty to respond within 14 days, since such an omission is not an unreasonably dangerous or foreseeably risk-creating omission.
The second allegedly negligent and liability incurring omission attributed by the trial court to the Employees’ Group was its receipt of the premiums remitted by Mrs. Griffith and its subsequent failure to promptly deny coverage. We reject the notion that the failure to deny coverage upon receipt of the premiums furnished a basis for tort liability for the simple reason that this alleged omission did not cause the injury complained of.
What is important, in this analysis, is that the first premium remitted to the Employees’ Group from Mr. Danley’s pension check by Mrs. Griffith, reached the Employees’ Group after Mrs. Danley’s operation. Thus even if the Employees’ Group had promptly denied coverage upon receipt of the premiums — and in fact the record reveals that they did respond with reasonable promptness — Mrs. Danley’s surgery would have already been completed. Thus, the Employees’ Group’s alleged breach of its duty to promptly respond to receipt of the premiums cannot, in the strictest sense, be said to have caused the damage complained of— the medical expenses incurred by the surgery. The alleged breach of this duty was in no sense a cause of the damages complained of.
At this point, we note parenthetically with respect to plaintiff-appellees’ correct assertion that Louisiana does not adhere to the theory of the case rule, that even if a contract of insurance could have been said to have existed between Mrs. Danley and the Employees’ Group that it is clear that the operation forming the basis of plaintiffs’ complaint would not have been covered. Recall that we have previously noted that Mrs. Danley obviously suffered a preexisting condition which this operation was designed to correct. Furthermore, even if that condition would somehow have been covered, it is clear, as we also noted earlier, *390 that Mrs. Danley, as a “late applicant,” would not have had her coverage effective prior to April 1st, subsequent to the operation.
For the forementioned reasons, we hereby reverse the judgment rendered by the lower court holding the Employees’ Group and the Sheriffs’ Fund solidary liable to the plaintiffs. We hold that the Sheriffs’ Fund was incorrectly cast in judgment insofar as the trial court erred in failing to sustain the declinatory exception of improper venue urged by the Sheriffs’ Fund. We furthermore hold that the Employees’ Group was incorrectly cast in judgment insofar as it did not violate a legal duty by failing to respond to a request for verification in 14 days, and did not cause any damages by virtue of its failure to deny coverage upon the receipt of premiums.
Therefore, plaintiffs’ demands against the Board of Trustees of the Sheriffs’ Pension and Relief Fund are dismissed without prejudice, and plaintiffs’ demands against the State of Louisiana Employees’ Group Benefits Program are dismissed with prejudice, all at plaintiffs’ costs.
REVERSED AND RENDERED.